IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. JACKSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DENNIS C. JACKSON, APPELLANT.

Filed September 15, 2015.    No. A-14-954.

Appeal from the District Court for Douglas County: GREGORY M. SCHATZ, Judge. Affirmed.

Dennis C. Jackson, pro se.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

MOORE, Chief Judge, and INBODY and RIEDMANN, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Dennis C. Jackson appeals the decision of the district court for Douglas County that, after an evidentiary hearing, denied Jackson's motion for postconviction relief. On appeal, Jackson alleges a variety of errors concerning the court's denial of relief related to his assertions of prosecutorial misconduct during his trial, ineffective assistance of his trial counsel, ineffective assistance of his appellate counsel, judicial misconduct, and cumulative error. We find no merit to Jackson's assertions on appeal, and we affirm.

## II. BACKGROUND

The events giving rise to this case occurred in November 2006, when Dennis Jackson shot three people in Omaha, Nebraska. See *State v. Jackson*, case No. A-08-579, 2009 WL 416066 (Neb. App. Feb. 17, 2009) (not designated for permanent publication) (*Jackson I*). All of the

victims required surgery for life-threatening injuries, but all survived. *Id.* At his trial, Jackson offered a defense that he had been defending himself when the victims had attempted to rob him at gunpoint of money he had brought with him to the victims' residence to purchase marijuana. *Id.* The jury rejected Jackson's defense. *Id.*

After a jury trial, Jackson was convicted on three counts of first degree assault, three counts of use of a weapon to commit a felony, and one count of being a felon in possession of a firearm. He was sentenced to 15 to 20 years' imprisonment for each count of first degree assault and of use of a weapon to commit a felony, and 10 to 10 years' imprisonment for the count of being a felon in possession of a firearm, all sentences to run consecutively. A separate charge of tampering with a witness was dismissed. Jackson appealed, and we affirmed the convictions and sentences. See *Jackson I, supra*.

In March 2010, Jackson filed a motion seeking postconviction relief. He filed supplemental amendments to the motion in February 2011, September 2012, and October 2013. Throughout his motion and the supplemental amendments, Jackson raised a variety of allegations of prosecutorial misconduct during his trial, ineffective assistance of his trial counsel, ineffective assistance of his appellate counsel, and judicial misconduct. The district court granted an evidentiary hearing and in October 2014, held that Jackson had failed to demonstrate that the outcome of his trial or appeal would have been different but for the alleged misconduct and ineffective assistance. The court denied Jackson's requested postconviction relief.

This appeal followed. More details concerning Jackson's allegations will be set forth as necessary below.

## III. ASSIGNMENTS OF ERROR

Jackson has alleged a number of errors in this appeal. First, Jackson asserts that the district court erred in denying his claim that there were numerous instances of "prosecutorial misconduct" during his trial and that both his trial and appellate counsel provided ineffective assistance of counsel concerning these instances of misconduct. Second, Jackson asserts that the court erred in denying his claim that his trial counsel provided ineffective assistance of counsel concerning a variety of potential witnesses and evidence and that his appellate counsel provided ineffective assistance of counsel concerning these instances of trial counsel's alleged ineffectiveness. Third, Jackson alleges that the court erred in denying his claim that his appellate counsel provided ineffective assistance of counsel in a variety of ways. Fourth, Jackson asserts that the court erred in denying that his claims of prosecutorial misconduct, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel resulted in cumulative error. Fifth, Jackson asserts that the court erred in denying his claim that there was judicial misconduct and trial error during his trial. Sixth, Jackson asserts that the court erred in denying his motion to discharge counsel appointed to represent him in this postconviction proceeding. Finally, Jackson asserts that the court erred in denying his motion for the court's recusal.

## IV. ANALYSIS

Jackson has presented this court with a handwritten brief and a handwritten reply brief, totaling more than 60 pages. The print on these pages is small enough that the content of most is the equivalent of more than two pages of text if typed and in a font provided for in the appellate

practice rules. See Neb. Ct. R. App. P. § 2-109(B). In addition, the size of the print makes the brief quite difficult to read. In this manner, Jackson has presented a substantial number of allegations concerning the conduct of the prosecutor and Jackson's counsel at trial, Jackson's counsel on appeal, and the court's denial of relief. We find no merit to Jackson's voluminous assertions of entitlement to postconviction relief.

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Lee*, 290 Neb. 601, 861 N.W.2d 393 (2015). An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented, which are within a fact finder's province for disposition. *Id.*

In an evidentiary hearing, as a bench trial provided by Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2008 & Cum. Supp. 2014) for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including witness credibility and weight to be given a witness' testimony. *State v. Armstrong*, 290 Neb. 991, 863 N.W.2d 449 (2015). In an appeal involving such a proceeding for postconviction relief, the trial court's findings will be upheld unless such findings are clearly erroneous. *Id.* In contrast, the appellate court independently resolves questions of law. *Id.*

1. PROSECUTORIAL MISCONDUCT

Jackson first asserts that the district court erred in denying him postconviction relief related to a variety of alleged instances of prosecutorial misconduct. Jackson asserts that there were numerous instances of misconduct, that his trial counsel was ineffective concerning these instances of misconduct, and that his appellate counsel was further ineffective concerning these instances of misconduct. Only the assertions concerning appellate counsel's alleged ineffectiveness are procedurally properly reviewed by us in this appeal, and we find no merit to Jackson's assertions.

(a) Alleged Instances of Misconduct

Jackson argues that "[p]rosecutorial misconduct occurred at trial violating [his] rights to a fair trial and due process." Brief for Appellant at 10. Jackson enumerates 14 instances of such misconduct. Those instances of misconduct largely concern assertions that the prosecutor acted improperly during closing argument and in eliciting and using allegedly perjured testimony during trial. We find no merit to these assertions.

Jackson argues that the prosecutor "improperly vouched for witnesses . . . during closing argument regarding ownership or possession of cell phones." Brief for Appellant at 12. He argues that the prosecutor knowingly used perjured testimony from one of the victims concerning ownership or possession of cell phones during the trial and during closing argument. He argues that the prosecutor also knowingly used perjured testimony from one of the victims about the discovery of a gun at the scene of the shootings and about testing for gunshot residue. He argues that the prosecutor improperly argued in closing argument that a witness had no contact with the victims at the hospital after the shootings.

Jackson argues that the prosecutor improperly shifted the burden of proof to Jackson during closing argument when arguing that Jackson failed to address evidence concerning wound track paths. He also argues that the prosecutor's argument during closing argument concerning wound

track paths was improper because it was not supported by expert testimony and was contrary to evidence adduced at trial.

Jackson argues that the prosecutor made improper remarks in closing argument "denigrating defense counsel." Brief for Appellant at 25.

Jackson argues that the prosecutor made improper remarks during opening statement and during the trial concerning ammunition and shell casings located at a witness' residence, the scene of the shootings, and the location of Jackson's subsequent arrest. He also argues that the prosecutor made improper statements during opening statements concerning a gun found at a witness' residence belonging to Jackson.

Jackson argues that the prosecutor made an improper attack on Jackson's credibility during closing argument by indicating that Jackson was lying. He argues that the prosecutor improperly gave his opinions during closing argument regarding alleged actions of the State's witnesses and regarding how the prosecutor or others might react in similar circumstances. He also argues that the prosecutor improperly provided her individual assessment of the evidence during closing argument. He also argues that the prosecutor made inflammatory comments during closing argument when suggesting that the jury was allowed to use "common sense" in evaluating the case. Brief for Appellant at 36.

Finally, Jackson argues that the prosecutor violated an order of the district court granting a motion in limine concerning law enforcement's discovery of body armor when Jackson was arrested.

(b) Merits of Misconduct and Trial Counsel's Effectiveness Related Thereto

With respect to each of these assertions of prosecutorial misconduct, Jackson also argues that his trial counsel provided ineffective assistance of counsel because trial counsel failed to properly object to the conduct and/or failed to seek either a mistrial or a curative instruction to the jury. These claims are not properly before us.

A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased. *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015).

In the present case, Jackson was appointed new counsel to represent him at his sentencing and on his direct appeal. As a result, he had different counsel at the time of his direct appeal than he had during the course of his trial. All of Jackson's assertions of prosecutorial misconduct and of ineffective assistance of trial counsel related thereto were known to Jackson and could have been raised on direct appeal. Because postconviction proceedings cannot be used to secure review of issues that were or could have been litigated on direct appeal, the merits of Jackson's arguments concerning alleged prosecutorial misconduct and effectiveness of trial counsel are not properly before the court in this postconviction proceeding.

(c) Prosecutorial Misconduct: Effectiveness of Appellate Counsel

With respect to each of Jackson's assertions of prosecutorial misconduct and effectiveness of trial counsel related thereto, Jackson also asserts that his appellate counsel provided ineffective assistance of counsel. Jackson argues that appellate counsel was ineffective for failing to raise each of those issues in Jackson's direct appeal. The claims of ineffective assistance of appellate counsel

are not procedurally barred. See *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015) (claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review). We find no merit to the assertions.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Armstrong*, 290 Neb. 991, 863 N.W.2d 449 (2015). Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact. *Id.* Findings of fact include the circumstances of the case and the counsel's conduct and strategy. *Id.* It is a question of law, however, whether those facts show counsel's performance was deficient and prejudiced the defendant. *Id.*

A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Id.* Counsel's performance was deficient if, in light of all the circumstances, it did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* An appellate court will not second-guess reasonable strategic decisions by counsel. *Id.*

To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.*

When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant. *State v. Sellers, supra*. That is, courts begin by assessing the strength of the claim appellate counsel failed to raise. *Id.* Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *Id*.

### (i) Statements During Closing Argument Regarding Evidence

Jackson's assertions that his appellate counsel was ineffective include assertions that appellate counsel failed to raise on appeal a number of instances of alleged prosecutorial misconduct regarding statements made by the prosecutor during closing argument. These statements include allegedly vouching for the credibility of witnesses during closing argument when suggesting that they had no reason to lie during their testimony and when arguing about how others might have reacted in similar circumstances; referring to allegedly perjured testimony of witnesses during closing argument; arguing that a witness had no contact with the victims while they were in the hospital despite indications in a deposition that the witness had contacted the victims by phone call; arguing concerning wound track paths without sufficient evidence to support the argument; giving an improper impression of the evidence during closing argument; and suggesting during closing argument that the jury could use "common sense" in evaluating the case. We find no merit to these assertions.

In determining whether appellate counsel was ineffective in not sufficiently raising these alleged instances of prosecutorial misconduct on direct appeal, we necessarily consider whether

the alleged instances would have supported a finding of prosecutorial misconduct. Generally, in assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper. *State v. Alarcon-Chavez*, 284 Neb. 322, 821 N.W.2d 359 (2012). Prosecutors are charged with the duty to conduct criminal trials in such a manner that the accused may have a fair and impartial trial, and prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused. *Id.* A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct. *Id.* Whether alleged prosecutorial misconduct is prejudicial depends largely on the context of the trial as a whole. See *id.*

When a prosecutor's conduct was improper, an appellate court considers the following factors in determining whether the conduct prejudiced the defendant's right to a fair trial: (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury, (2) whether the conduct or remarks were extensive or isolated, (3) whether defense counsel invited the remarks, (4) whether the court provided a curative instruction, and (5) the strength of the evidence supporting the conviction. *Id.*

In this case, the failure of appellate counsel to raise on direct appeal the above asserted instances of misconduct during closing argument does not suggest ineffective assistance of counsel. The district court concluded that Jackson failed to demonstrate during his postconviction hearing how the outcome of his direct appeal would have been different but for the alleged instances of ineffective assistance of appellate counsel. We agree.

We concluded in our opinion affirming Jackson's convictions and sentences on direct appeal that the evidence adduced against him at trial was overwhelming. The State adduced testimony from the three victims who Jackson had been accused of shooting, as well as from another witness to the shootings. That testimony consistently demonstrated that Jackson shot all three victims, that no one besides Jackson had a gun, and that no one acted in a threatening manner toward Jackson. See *Jackson I, supra*. The State also adduced evidence of spent cartridge casings located at the scene and matching a gun found in the Michigan hotel room where Jackson was apprehended several months later. *Id.*

In his deposition, Jackson's appellate counsel testified that he made a strategic decision on appeal not to raise some of the assertions that Jackson alleged constituted prosecutorial misconduct because Jackson "went way too far for his rationale" and because these were more appropriately considered instances of the prosecutor doing his job, so appellate counsel focused on what he believed were the strongest assertions to raise on direct appeal.

The district court did not err in concluding that Jackson failed to demonstrate how the outcome of his appeal would have differed if his appellate counsel had raised these assertions on direct appeal. In the context of the trial as a whole, Jackson has not demonstrated that these isolated remarks of the prosecutor during closing argument inflamed the prejudices of the jury or excited their passions against him. Even if we assumed that the alleged remarks were improper, Jackson has failed to demonstrate that the remarks misled or unduly influenced the jury in light of the overwhelming evidence supporting the convictions. Moreover, the court specifically instructed the jury prior to closing arguments that what the attorneys said during closing arguments was not evidence and that the jury was to limit its determination on the outcome of the case to the evidence presented during the trial.

*(ii) Statements During Closing Argument Regarding Defense*

Jackson's assertions that his appellate counsel was ineffective further include a number of assertions that appellate counsel failed to raise on appeal a number of other instances of alleged prosecutorial misconduct regarding closing argument. These instances include the prosecutor allegedly improperly shifting the burden of proof to Jackson during closing argument, denigrating Jackson's trial counsel during closing argument, and attacking Jackson's credibility during closing argument. We find no merit to these assertions.

Again, we find no error in the district court's conclusion that Jackson failed to demonstrate that the outcome of his direct appeal would have differed had his appellate counsel raised these assertions. The prosecutor pointing out that the State had presented testimony from doctors about the wound track path, that the prosecutor had wondered how the defense would "get over" that testimony, and noting that the defense had not addressed it did not improperly shift the burden of proof to Jackson, particularly when the jury was specifically instructed that the State bore the burden of proof. The prosecutor arguing that Jackson's counsel had "throw[n] [something] out as sort of a red herring" was not prejudicially denigrating to defense counsel or Jackson's defense. The prosecutor contrasting Jackson's testimony with that of the victims and the other witness and suggesting that Jackson was lying was not an improper or prejudicial attack on Jackson's credibility. Jackson has not shown that the outcome of his direct appeal would have differed if any of these had been raised by appellate counsel.

*(iii) Statements During Opening Statement*

Jackson also asserts that his appellate counsel was ineffective for not raising alleged instances of misconduct during the prosecutor's opening statement. Jackson asserts that the prosecutor made improper statements concerning ammunition and shell casing and concerning a gun found at a witness' residence. Jackson argues that the prosecutor made references to "a .38 caliber gun" and shell casings, when the gun and shell casing recovered were actually ".380 not .38." Brief for Appellant at 27. We find no merit to these assertions.

We again agree with the district court's conclusion that Jackson failed to demonstrate that the outcome of his direct appeal would have differed had appellate counsel raised these assertions. Jackson offered no evidence to support his conclusions that "[t]his was clearly an attempt to confuse and misguide the jury" or that the prosecutor "recklessly and intentionally disregarded this information in an unfair attempt to mislead the jury." Brief for Appellant at 27.

*(iv) Violation of Motion in Limine*

Jackson's final assertion concerning his appellate counsel's effectiveness related to raising claims of prosecutorial misconduct relates to Jackson's assertion that the State violated an order granting a motion in limine. There is no merit to this claim of ineffective assistance of appellate counsel because appellate counsel did raise this issue on direct appeal and we found that there was no prejudice related to Jackson's trial counsel's alleged failure to raise resistance to the violation.

On direct appeal, Jackson's appellate counsel argued that the trial court had erred in allowing testimony regarding a bulletproof vest after granting a motion in limine related thereto. Jackson's appellate counsel also argued that trial counsel had been ineffective for failing to raise resistance to the violation. We specifically held that "Jackson was not prejudiced by [trial]

counsel's actions regarding the motion in limine" because "one passing comment about the gun used in the shooting being received from the Michigan authorities along with a bulletproof vest" was "highly unlikely to have influenced the jury, given the overwhelming evidence to support Jackson's convictions." *Jackson I, supra* at *4.

Appellate counsel was not ineffective regarding the alleged violation of the motion in limine. Appellate counsel raised the issue on direct appeal, and we rejected it. The district court did not err in failing to grant Jackson relief in postconviction on this basis.

### (d) Conclusion

We find no merit to Jackson's assertions that the district court erred in denying him postconviction relief related to alleged instances of prosecutorial misconduct. Only the assertions concerning appellate counsel's alleged ineffectiveness are procedurally properly reviewed by us in this appeal, and we find no merit to Jackson's assertions that the district court erred in denying relief.

### 2. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL: WITNESSES AND EVIDENCE

Jackson next asserts that the district court erred in denying him postconviction relief related to a variety of alleged instances of ineffective assistance of counsel during his trial with respect to a variety of potential witnesses and evidence. Jackson asserts that his appellate counsel was further ineffective concerning these instances of trial counsel's alleged ineffectiveness. Some of the claims concerning trial counsel are not procedurally properly before us, and we find no merit to Jackson's assertions concerning the remaining claims or regarding his appellate counsel.

### (a) Allegations Regarding Witnesses

Jackson argues that his trial counsel was ineffective for failing to adequately prepare for trial, investigate, locate, and interview a variety of witnesses that Jackson requested his counsel call on Jackson's behalf. He also argues that his trial counsel was ineffective for failing to adequately investigate and prepare for trial by fully interviewing Jackson concerning his testimony at trial. Jackson asserts that his appellate counsel was also ineffective for failing to sufficiently raise these claims on direct appeal. We find no merit to these assertions.

As noted above, to prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Armstrong*, 290 Neb. 991, 863 N.W.2d 449 (2015). A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Id.* Counsel's performance was deficient if, in light of all the circumstances, it did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* An appellate court will not second-guess reasonable strategic decisions by counsel. *Id.*

To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.*

*(i) Claims Regarding Potential Witnesses*

On direct appeal, Jackson's appellate counsel did raise as an assertion that trial counsel was ineffective concerning counsel's failure to investigate, locate, and interview a variety of witnesses that Jackson requested his counsel call on Jackson's behalf. These witnesses were all listed in a letter that Jackson sent to counsel. On direct appeal, we concluded that "[t]rial counsel's reasons for acting or not acting on Jackson's requests relates to counsel's trial strategy and is not part of the record on direct appeal." *Jackson I, supra* at *4. As a result, we held that the record was insufficient to address the claim of trial counsel's ineffectiveness on direct appeal. *Id.* Jackson's appellate counsel was not ineffective with respect to these proposed witnesses because appellate counsel raised and preserved the issue.

In its brief on appeal, the State argues that "[a]ll of Jackson's allegations regarding trial counsel's deficient performance would either have been apparent to Jackson at the time of appeal or would have been apparent from the record." Brief for Appellee at 4. Although the State acknowledges that we held the record insufficient to reach all of Jackson's claims on direct appeal, the State argues that Jackson is prohibited from claiming that he received ineffective assistance of trial counsel and the State offers no argument concerning the merits of Jackson's claims concerning the calling or failure to call proposed witnesses.

With respect to each of the witnesses Jackson alleges his trial counsel was ineffective for failing to properly investigate, locate, and interview, the record from Jackson's postconviction hearing demonstrates that Jackson is not entitled to relief. Jackson's trial counsel testified by deposition with respect to each of the proposed witnesses identified by Jackson as to why counsel acted as he did. With respect to most, counsel's testimony demonstrates that the decision was a strategic one, based on the substance of the witness' proposed testimony being established through other evidence, and based on a determination that the potential risk of opening the door for unfavorable testimony outweighed the potential value of the proposed testimony. With respect to one of the proposed witnesses, counsel testified that the witness was called and did testify, but lacked firsthand knowledge about what Jackson wanted the witness to testify about. With respect to another of the proposed witnesses, counsel testified that he was unable to locate the witness and was unable to serve a prepared subpoena, despite attempting to locate the witness up to the time of trial.

Jackson's trial counsel testified in his deposition that he rejected some of Jackson's proposed strategies as being "preposterous" claims, and that he did not pursue presenting some evidence that Jackson wanted presented because doing so would have opened the door to other prejudicial evidence. With respect to Jackson's assertion that his trial counsel should have challenged one witness' competency, counsel testified in his deposition that he deposed the witness, that he did not believe that she appeared incompetent, and that he made a strategic decision to be careful with challenging her mental competency in front of the jury.

The evidence presented at the postconviction hearing demonstrates that Jackson's assertions concerning his trial counsel's alleged ineffectiveness related to the location and interviewing of potential witnesses was explained largely as matters of trial strategy. Jackson presented no evidence to demonstrate that these strategic decisions were deficient when judged against a standard of other attorneys in the locale, and we do not second guess reasonable strategic

decisions. See *State v. Armstrong, supra*. Jackson has not demonstrated that the outcome of his trial would have been different had trial counsel acted differently with respect to these proposed witnesses, and the district court did not err in failing to grant relief on these ineffective assistance of trial counsel claims.

*(ii) Claims Regarding Jackson's Testimony*

Jackson also asserts that his trial counsel was ineffective for failing to adequately investigate and prepare for trial by fully interviewing Jackson concerning his testimony at trial, specifically regarding trial counsel's failure to pursue a line of questioning Jackson wanted pursued. Jackson asserts that his appellate counsel was also ineffective for failing to sufficiently raise these claims on direct appeal. We disagree.

Jackson's claim concerning his trial counsel is not properly before us because Jackson was appointed new counsel to represent him on direct appeal, the claim could have been raised on direct appeal, and the claim was not raised. Jackson cannot seek review of a claim now that could have been raised on direct appeal. See *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015).

Although Jackson's claim concerning appellate counsel failing to raise this claim on appeal is not procedurally barred, the record from Jackson's postconviction hearing does not demonstrate an entitlement to relief. Jackson's trial counsel testified during his deposition that he made a strategic decision not to pursue a line of questioning that Jackson wanted him to pursue because he believed that it was a preposterous claim. Jackson presented no evidence to demonstrate that this strategic decision was deficient or fell below the standard of conduct expected of other attorneys in the locale, and Jackson failed to demonstrate that the outcome of his appeal would have been different if appellate counsel had raised this issue.

(b) Allegations Regarding Telephone Records

Jackson argues that his trial counsel was ineffective for failing to obtain certain telephone records and for failing to effectively impeach a witness at trial. Jackson asserts that his appellate counsel was also ineffective for failing to sufficiently raise these claims on direct appeal. We disagree.

Jackson's claim concerning his trial counsel is not properly before us because Jackson was appointed new counsel to represent him on direct appeal, the claim could have been raised on direct appeal, and the claim was not raised. Jackson cannot seek review of a claim now that could have been raised on direct appeal. See *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015).

Although Jackson's claim concerning appellate counsel failing to raise this claim on appeal is not procedurally barred, the record from Jackson's postconviction hearing does not demonstrate an entitlement to relief. Jackson's trial counsel testified during his deposition that he made a strategic decision not to pursue presentation of this evidence because doing so would have opened the door to additional prejudicial evidence and would not have had a significant positive impact for Jackson's defense. Jackson presented no evidence to demonstrate that this strategic decision was deficient or fell below the standard of conduct expected of other attorneys in the locale, and Jackson failed to demonstrate that the outcome of his appeal would have been different if appellate counsel had raised this issue.

(c) Conclusion

We find no merit to Jackson's assertions that the district court erred in denying him postconviction relief related to alleged instances of ineffective assistance of counsel during his trial with respect to a variety of potential witnesses and evidence. Some of the claims concerning trial counsel are not procedurally properly before us. We find no merit to Jackson's assertions concerning the remaining claims or regarding his appellate counsel, and we find no merit to Jackson's assertions that the district court erred in denying relief.

### 3. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Jackson next asserts that the district court erred in denying him postconviction relief related to a variety of alleged instances of ineffective assistance of appellate counsel. We find no merit to Jackson's assertions.

Jackson argues that his appellate counsel, who also represented Jackson at sentencing, was ineffective for failing to review the presentence report and discuss it with Jackson.

Jackson argues that his appellate counsel was ineffective because counsel had a conflict of interest. He argues that his appellate counsel was ineffective for failing to file a motion for rehearing of this court's decision affirming his convictions. He argues that his appellate counsel was ineffective for failing to raise federal claims, instead of only state claims, regarding the sufficiency of the evidence to support his convictions, regarding jury instructions, and regarding alleged violation of a court order granting a motion to suppress. He also argues that his appellate counsel was ineffective in the preparation of a petition for further review.

As noted above, to prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Armstrong*, 290 Neb. 991, 863 N.W.2d 449 (2015). A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Id.* Counsel's performance was deficient if, in light of all the circumstances, it did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* An appellate court will not second-guess reasonable strategic decisions by counsel. *Id.*

To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.*

When analyzing a claim of ineffective assistance of appellate counsel, we begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant. *State v. Sellers, supra*. That is, we assess the strength of the claim appellate counsel failed to raise. *Id.* Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *Id.*

## (a) Sentencing

Jackson first asserts that his appellate counsel, who also represented him at the time of sentencing, was ineffective because counsel "failed to review the presentence report and discuss it with [Jackson]." Brief for Appellant at 46. Jackson argues that his prior record was inaccurately presented in the presentence report and that the court used the inaccurate prior record as a factor in sentencing Jackson. We find no merit to this assertion.

Jackson's primary argument on this issue is that at sentencing the trial court, based on information in the presentence report, stated that Jackson had "a previous conviction of an armed robbery with a firearm of a business, marijuana delivery charge . . . and a criminal mischief felony charge." Jackson testified in his deposition that when the court stated this, Jackson "tapped [counsel] on the arm, like I didn't get convicted of no armed robbery. I ain't ever got convicted of no felony mischief." He argues on appeal that he has never been convicted of "armed" robbery or felony criminal mischief.

On direct appeal, Jackson's appellate counsel asserted that the sentence imposed against him was excessive. In our review of Jackson's sentence, we discussed all of the various factors to be considered in assessing whether a sentence imposed demonstrates an abuse of discretion. We noted Jackson's extensive criminal record, including numerous violations beginning when he was only 14 years of age and including numerous convictions in just over 5 years' time, most of which was spent in and out of jail. In reviewing that history, we recognized that among Jackson's criminal history, he had a "conviction[] for robbery (he robbed post office with gun), . . . [and a conviction for] criminal mischief." *Jackson I, supra* at *7.

We also noted that the substance abuse questionnaire in this case placed Jackson in the maximum risk range on the violence and antisocial scales. The presentence report also indicated that Jackson showed no remorse for the present offenses and little remorse for past offenses, Jackson had a demonstrated history of noncompliance with court orders, Jackson had a history of assault and anger problems, and Jackson was a documented gang member. The presentence report included the conclusion that Jackson had more than amply demonstrated that he is an extremely dangerous individual and a very high risk for reoffending.

In this case, the nature of the present offenses and the violence involved therein was a substantial factor in the sentences imposed. As we noted in our opinion on Jackson's direct appeal, he shot three unarmed men over what he alleged was a missing or stolen gun. He specifically sought out the victims at the home where two of them resided and, according to the jury's verdict, the victims were unarmed and did not threaten or provoke him. The victims suffered multiple gunshot wounds requiring surgery for life-threatening injuries. Jackson then fled the jurisdiction for several months before being apprehended in Michigan where he was found in the company of other felons at a known drug location and in the possession of a gun.

Our consideration of Jackson's prior record when we considered his challenge to the sentence imposed was not based on a belief that he was convicted of armed robbery or felony criminal mischief; rather, we recognized a prior conviction for robbery and for criminal mischief. The fact that the robbery conviction was based on a factual situation wherein Jackson robbed a business with a gun is pertinent, even if the conviction was not for "armed" robbery.

Jackson was sentenced to a total of 100 to 130 years' imprisonment, but his convictions carried the possibility of more than 200 years' imprisonment and the sentences imposed were well within the statutory range of permissible sentences and not at the high end of that range. Jackson has not demonstrated that the sentences imposed would have been different had the trial court's alleged misstatement of Jackson's record been raised by counsel at his sentencing.

### (b) Conflict of Interest

Jackson asserts that his appellate counsel was ineffective because of a conflict of interest. Jackson argues that appellate counsel was assisted in the preparation of the brief on Jackson's direct appeal by another attorney who had represented a potential witness who had claimed that Jackson "had told him to lie on [Jackson's] behalf at trial." Brief for Appellant at 47. We find no merit to this assertion.

A conflict of interest which adversely affects a lawyer's performance violates the client's Sixth Amendment right to effective assistance of counsel. *State v. Sandoval*, 280 Neb. 309, 788 N.W.2d 172 (2010). A conflict of interest must be actual rather than speculative or hypothetical before a conviction can be overturned on the ground of ineffective assistance of counsel. *Id.*

Jackson's trial counsel testified in his deposition that he had planned to depose a potential witness who "was potentially going to testify saying that – that Mr. Jackson had asked him to lie for him as a – as a – as a witness on behalf of Mr. Jackson." Counsel ended up not deposing the potential witness, however, because the prosecutor informed counsel that she was not going to call the potential witness. Counsel also testified that the potential witness had "come to the County Attorney's office . . . through his attorney."

Jackson's appellate counsel testified in his deposition that he had received assistance in preparation of the brief on Jackson's direct appeal from the same attorney who had apparently represented the potential witness. Counsel testified that the other attorney had conducted research, reviewed the trial record, and drafted the brief for counsel.

The record demonstrates that the potential witness was never called and did not present any testimony in this case. Jackson has not demonstrated what possible prejudice he suffered from the alleged conflict of interest, has not demonstrated that the attorney's involvement in Jackson's appellate brief resulted in any prejudice to him, and has not demonstrated that the outcome of the appeal would have been different but for the alleged conflict of interest.

### (c) Failure to Raise Claims on Appeal

Jackson asserts that his appellate counsel was ineffective for failing to raise federal challenges to the sufficiency of the evidence, to an alleged error in jury instructions, and to the violation of the order granting the motion in limine that was previously discussed above. Jackson's assertion on appeal is that although his appellate counsel raised state challenges to each of these, the failure to also allege a federal challenge was ineffective assistance. This claim is meritless.

When analyzing a claim of ineffective assistance of appellate counsel, we begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant. *State v. Sellers, supra.* That is, we assess the strength of the claim appellate counsel failed to raise. *Id.* Counsel's failure to raise an issue on appeal could be ineffective assistance only

if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *Id.*

Jackson's appellate counsel raised a challenge to the sufficiency of the evidence and we found that the evidence was overwhelming. Jackson's appellate counsel raised a challenge to the jury instructions and we found the claim to be without merit. Jackson's appellate counsel raised a challenge to the alleged violation of the order granting the motion in limine and we concluded that there was no prejudice to Jackson because of the overwhelming evidence adduced against him.

Jackson has not demonstrated how a federal challenge on any of these grounds would have resulted in relief where the state challenge failed. Indeed, Jackson has not even attempted to make such an explanation. His argument on each of these points is conclusory, simply asserting that counsel erred in failing to raise a federal challenge and that the court erred in denying relief. Because Jackson has made no showing that there is any probability that inclusion of federal challenges in addition to state challenges would have changed the result of Jackson's direct appeal, the district court did not err in denying relief.

(d) Further Review

Finally, Jackson asserts that his appellate counsel provided ineffective assistance in failing to move for a rehearing before this court to correct a misstatement of fact in this court's opinion affirming his convictions and in "failing to raise 9 issues on petition for further review in proper format under the Neb. Ct. R. of App. P." Brief for Appellant at 48-49. We find no merit to these assertions.

Jackson argues that he proposed an instruction at trial regarding self-defense that was based on an assertion that at least one of the three victims had threatened him, that his use of force against that threat was justified, and that under a theory of transferred intent, self-defense was a viable defense with regard to all three victims. Our opinion affirming his conviction on direct appeal included a conclusion that the proposed instruction was not a correct statement of law because "under [Jackson's] evidence all three of the victims had guns and posed a threat to him." *Jackson I, supra* at *6. Jackson argues that this statement in our opinion is a misstatement of the evidence adduced at trial, that the evidence at trial suggested that only two of the three victims had a gun and had threatened him, and that his appellate counsel was deficient for not seeking a rehearing because of this misstatement of the evidence.

In support of his assertion in this appeal, Jackson points us to a small portion of the very large trial record. A review of that portion of the record supports that Jackson's testimony suggested that two of the victims, not all three of them, had a gun and threatened him. Without concluding whether the entire large trial record would support Jackson's assertion, we find that he adduced insufficient evidence at the postconviction hearing to merit relief, even assuming the record would support his assertion.

In the present postconviction proceeding, Jackson failed to adduce evidence concerning why his appellate counsel did not seek a rehearing related to this potential factual misstatement. His appellate counsel testified by deposition and acknowledged that he did not file a motion for rehearing. There was no evidence adduced, however, concerning why he made that determination. Without such evidence to demonstrate why counsel acted or whether acting would have resulted

- 14 -

in relief, Jackson has failed to adduce sufficient evidence to demonstrate that this performance was deficient or that it prejudiced him. This assigned error lacks merit.

Jackson also claims that his appellate counsel was ineffective for failing to raise issues in the petition for further review. Jackson's appellate counsel testified that he did seek further review, but that it was denied. Jackson's argument on appeal includes no indication of what "9 issues" should have been raised in the petition for further review but were not raised, or how the petition for further review was not in a proper format. Jackson merely concludes that counsel was ineffective in this regard without any explanation or showing that the outcome would have been different. Moreover, because there is no constitutional right to discretionary review, there is no constitutional right to effective assistance of counsel in seeking further review after a direct appeal. See *State v. Mata*, 273 Neb. 474, 730 N.W.2d 396 (2007), distinguished on other grounds by *State v. Dragoo*, 277 Neb. 858, 765 N.W.2d 666 (2009). Thus, there is no merit to this assertion.

### (e) Conclusion

We find no merit to Jackson's assertions that the district court erred in denying him postconviction relief related to alleged instances of ineffective assistance of appellate counsel.

### 4. CUMULATIVE ERROR

Jackson next asserts that the district court erred in denying that his claims of prosecutorial misconduct, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel resulted in cumulative error. We find no merit to this assertion.

Jackson argues that "the cumulative affect [sic] of the prosecutorial misconduct, ineffective assistance of trial counsel and appellate counsel denied him due process." Brief for appellant at 49. The State argues that because there is no merit to any of Jackson's underlying assertions of error, there cannot be cumulative error meriting relief. We agree.

We have concluded that Jackson has not demonstrated that he is entitled to relief on his assertions of prosecutorial misconduct, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel. Inasmuch as we have concluded that Jackson has failed to demonstrate any error, he has similarly failed to demonstrate that there is cumulative error meriting relief. We find no error by the district court in denying relief on this assertion.

### 5. JUDICIAL MISCONDUCT AND TRIAL ERROR

Jackson next asserts that the district court erred in denying him postconviction relief regarding his claim that there was judicial misconduct and trial error during his trial. We find no merit to this assertion because Jackson could have raised this on direct appeal but did not do so.

Jackson argues that the trial court failed to inquire at sentencing whether Jackson had had an opportunity to review the presentence report and that the court sentenced him based on an inaccurate prior criminal history set forth in the presentence report. He argues these errors amounted to judicial misconduct and trial error.

According to Jackson's arguments on appeal, during his sentencing hearing, the trial court, based on information in the presentence report, stated that Jackson had "a previous conviction of an armed robbery with a firearm of a business, marijuana delivery charge . . . and a criminal mischief felony charge." Jackson testified in his deposition that when the court stated this, Jackson

"tapped [counsel] on the arm, like I didn't get convicted of no armed robbery. I ain't ever got convicted of no felony mischief." He argues on appeal that he has never been convicted of "armed" robbery or felony criminal mischief and that the court's failure to inquire about this and allegedly sentencing him based on incorrect information is a basis for relief now.

A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased. *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015). Jackson's assertions of alleged judicial misconduct and trial error were, according to Jackson's own testimony, known to him at the time of his sentencing and could have been raised on direct appeal. As such, these assertions are not properly before us in this postconviction proceeding.

### 6. MOTION TO DISCHARGE

Jackson next asserts that the district court erred in denying his motion to discharge counsel appointed to represent him in this postconviction proceeding. We find no merit to this assertion.

Jackson has presented no argument in his brief on appeal to demonstrate why the court erred in denying his motion to discharge counsel or to demonstrate how he was prejudiced by the court's denial of the motion. The totality of his argument concerning this assignment of error is a single sentence in which he concludes that "[t]he trial court erred in denying motion to discharge counsel." Brief for Appellant at 50.

A trial court's decision on a request to dismiss appointed counsel is reviewed for an abuse of discretion. *State v. Walker*, 272 Neb. 725, 724 N.W.2d 552 (2006).

In June 2014, after the court had conducted an evidentiary hearing on Jackson's request for postconviction relief, Jackson filed a motion seeking the discharge of his court-appointed counsel. The district court conducted a hearing and Jackson presented evidence and argument in support of his assertions that counsel was not sufficiently representing him. The court subsequently entered an order denying Jackson's motion. In the order, the court noted that Jackson had filed supplemental motions for postconviction relief, as well as a supplemental amended brief, "acting on his own behalf" after the court had appointed counsel.

In denying Jackson's motion for discharge of his counsel, the court specifically indicated that Jackson was "free to submit his own brief on his motions for postconviction relief," allowing Jackson to represent himself in addition to his court-appointed representation. Jackson has not demonstrated any error or any prejudice as a result of the court's refusal to discharge his appointed counsel after the conclusion of the evidentiary hearing, and we find no abuse of discretion by the court in denying his motion. This assignment of error is meritless.

### 7. MOTION FOR RECUSAL

Jackson finally asserts that the district court erred in denying his motion for the court's recusal. We find no merit to this claim.

Jackson argues that he "raised several issues in his motion for recusal questioning the trial judge's ability to be impartial." Brief for appellant at 50. Those issues included his assertions of judicial misconduct and trial error set forth above, the fact that he had made assertions of prosecutorial misconduct related to a prosecutor who had subsequently become a district court judge, the fact that he had made assertions of ineffective assistance of trial counsel against an

attorney who continued to appear before the trial court in other cases, and an alleged demeaning tone used by the court at Jackson's sentencing in referring to Jackson as a "menace to society."

A motion to recuse is initially entrusted to the discretion of the trial court, and the trial court's ruling will be affirmed absent an abuse of that discretion. See *State v. Kofoed*, 283 Neb. 767, 817 N.W.2d 225 (2012). Under the Nebraska Revised Code of Judicial Conduct, a judge must recuse himself or herself from a case if the judge's impartiality could be reasonably questioned. See *State v. Kofoed, supra*. A defendant seeking to disqualify a judge bears the heavy burden of overcoming the presumption of judicial impartiality. *Id.* Absent a showing of actual bias or prejudice, a litigant must demonstrate that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness. *State v. Kofoed, supra*.

In this case, we find no abuse of discretion. Jackson moved the court to recuse itself in August 2014, several months after the postconviction hearing had already been conducted. Jackson has not demonstrated any actual bias and has not demonstrated that a reasonable person who knew the circumstances of this case would have questioned the court's partiality. We find no merit to this assignment of error.

## V. CONCLUSION

We find no merit to Jackson's numerous assertions on appeal. As set forth above, many of the assertions are not properly before us in this postconviction setting, and we find that Jackson has not demonstrated an entitlement to relief on the remaining assertions. Accordingly, we affirm.

AFFIRMED.